UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
UNITED STATES OF AMERICA,                :
                                         :
           -v-                           :    06 Cr. 781 (DLC)
                                         :
LARRY EISENBERG,                         :    OPINION AND ORDER
                      Defendant.         :
                                         :
-----------------------------------------X

Appearances:

For the Defendant:
Flora Edwards
115 Broadway, Suite 1505
New York, New York 10006

For the Government:
E. Danya Perry
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

DENISE COTE, District Judge:

This Opinion addresses defendant Larry Eisenberg's request for a hearing on certain alleged factual disputes stemming from the Court's March 31 amended order of restitution. Having considered Eisenberg's submission, the Government's opposition, and Eisenberg's reply, his request for a hearing on these alleged factual disputes is denied.

BACKGROUND

Eisenberg and his co-conspirator based in Canada sold essentially worthless stones to investors, representing them to

be investment grade gemstones.  The Canadian was responsible for the marketing of the stones, touting that they would be accompanied by a certificate issued by an independent gem laboratory.  Eisenberg's role was to find and ship the stones, principally "emeralds," accompanied by the fraudulent certificates that he prepared.

On April 5, 2007, Eisenberg pleaded guilty to one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349 and one count of mail fraud, in violation of 18 U.S.C. § 1341, pursuant to a plea agreement with the Government that contained a stipulated guidelines range of thirty-three to forty-one months' imprisonment.  At his allocution, Eisenberg stated that between 2000 and 2006, he had worked with a business known as LVZ, sold emeralds to LVZ and caused false gemstone identification reports to be mailed throughout the United States to purchasers of the emeralds.  In the reports, the emeralds were identified as "investment grade" even though Eisenberg knew that the stones were not investment grade.

The Probation Department's Presentence Report ("Report") also calculated the guidelines range as thirty-three to forty-one months' imprisonment and recommended that the defendant be sentenced to a term of imprisonment at the top of the range: forty-one months.  It described Eisenberg's role in the fraudulent scheme with LVZ as shipping the purportedly precious

2

gemstones from his office with Gem Stone Identification Reports that he had prepared. An independent appraiser retained by the Government reviewed some of Eisenberg's Gem Stone Identification Reports and the stones that Eisenberg shipped with those reports and concluded that the reports contained "material inaccuracies." For instance, pieces that Eisenberg described as "Natural Colombian Emeralds" included a dyed rock with a turtle's head glued to the rock, and an assembled stone with emerald crystals glued onto the stone. The Report revealed that following his arrest Eisenberg transferred $72,000 to each of two relatives and $20,000 to a third relative, for a total of $164,000; that he had home equity in the amount of $1,600,000 and other assets; and that LVZ had issued checks to Eisenberg in an amount of over $1.1 million. The Report identified the loss and restitution amount as $1,137,355, which was owed to the thirty-five victims identified by the Government as of the date of the Report. This sum reflected the amount that the thirty-five victims had paid to the conspirators. The Report indicated, however, that the Government was updating its list of victims weekly.

A sentencing hearing was held on August 21, but was adjourned principally so that Eisenberg could attempt to make substantial restitution to his victims in advance of sentencing, as evidence of his remorse. During the August 21 proceeding,

defense counsel requested that some of the descriptions of Eisenberg's assets be revised but had no objections to any other fact recited in the Report. The Court indicated that its sentence was going to be influenced by the efforts that the defendant made to pay restitution, particularly in light of the defendant's plea for mercy and claim of genuine remorse. Referring to the victims' letters received as part of the sentencing record, the Court noted that many of the victims of the fraud were people who could ill afford to lose the money they paid for the stones, that the defendant was paid over $1 million by his Canadian co-conspirator, that he had substantial assets, and that he had made a series of transfers to his relatives following his arrest. Defense counsel consulted with his client, and after a break reported that Eisenberg wished to express his remorse "by making the victims whole as soon as possible."

The Government indicated that its "investigation" was ongoing, as victims continued to contact the postal inspector. It represented that as of August 21, the identified victims had sustained an aggregate loss of $1,191,780, and were owed this amount in restitution.

In response to defense counsel's inquiry as to whether the victims would relinquish their stones in exchange for the

restitution payments and other statements by defense counsel attempting to minimize his client's culpability, the Government represented that its independent appraisals revealed that the stones that Eisenberg shipped and certified were "junk" and that Eisenberg well knew that his appraisal reports exaggerated their quality. It further noted that some of the victims might never be identified because the victims believed they had a valuable emerald, and wouldn't discover their stone was worthless until they tried to sell it. The Court asked counsel to discuss whether a Fatico hearing needed to be scheduled in advance of the sentencing date. See United States v. Fatico, 579 F.2d 707 (2d Cir. 1978). Defense counsel did not seek a Fatico hearing in connection with any issue, including the calculation of the amount owed in restitution.

By the time sentencing proceedings reconvened on September 21, the total loss incurred by the victims of Eisenberg's fraud had increased again and was calculated at $1,223,445 based on the amounts forty victims had paid for their stones. In advance of sentencing, Eisenberg had deposited $800,000 with the Clerk of Court towards the compensation of his victims. At sentencing, Eisenberg's counsel informed the Court that an additional $50,000 was to be deposited with the Clerk in the near future, and that Eisenberg was also pursuing a $150,000 mortgage, the proceeds of which he intended to put towards

5

victim compensation.  Defense counsel explained that Eisenberg had hoped to make an initial payment of $1 million in advance of sentencing, but that he had encountered difficulties obtaining a mortgage on his home because the Government had placed a lien on it.  He added that Eisenberg had "no explanation for committing" this crime, that he was sorry, and that he wanted to "make it right."  Referring to the fact that the Government agreed to return the stones to Eisenberg when restitution had been paid in full, defense counsel indicated that Eisenberg hoped to "recoup somewhat" by selling the stones.

When Eisenberg spoke he added that he was

> filled with shame and humiliation to express
> my remorse.  I pleaded guilty because I am
> guilty.  I want to extend by heartfelt
> apology . . . to every victim and say how
> sorry I am for the pain that they have
> endured and for the economic loss that has
> been occasioned on them as a result of my
> actions.  I want to assure the Court that I
> am prepared to do everything in my power to
> try and make amends for my mistakes.  I
> don't want anyone to remain hurt
> economically as a result of my misdeeds . .
> . .  I am fully aware that due to my actions
> I helped cause grief and monetary loss to
> innocent people . . . .

The Court noted that it had adjourned the sentence to give Eisenberg the opportunity for which he had asked to show that he was remorseful, that he would try to make the victims whole and that he wasn't trying to hide his assets.  It added, that "based on your statement to me that you will do everything to make the

victims, all of the victims, entirely whole, I am not going to follow the probation department's recommendation here to sentence you at the highest end of the guidelines range." Eisenberg was sentenced principally to thirty-three months' imprisonment. The Court also entered a restitution order in the amount of $1,223,445.

By letter dated December 5, 2007, the Government requested that the Court amend its previously entered order of restitution against Eisenberg as a result of submissions made after Eisenberg's sentencing by eleven additional victims of the fraud. Through a letter of December 6, the defendant requested a hearing. On December 7, the Court set out a schedule for the parties to address the issues, requiring the defendant to identify any factual disputes that required a hearing. The defendant's submission of February 11 could not identify any factual disputes arising from the claims made by the eleven victims, since as of that date the Government had only provided the victims' names and the amount of their individual claims, but Eisenberg presented a number of other arguments opposing imposition of the obligation to pay more in restitution. At no point, however, did he argue that the amount of restitution should not be set at the amount paid by a victim for the stones.

The Government's submission, dated March 18, included legal analysis as well as documentary support, such as LVZ's invoices,

for amendment of the restitution order to reflect the additional victims' losses. An Opinion dated March 19, 2008 found that amending the order of restitution was appropriate, and ordered the Government to submit a proposed amended restitution order to the Court by Friday, March 28, 2008, to increase the amount of restitution owed by the Eisenberg to $1,499,625, reflecting the loss incurred by all fifty-one identified victims. The Order also required the Government to make all reasonable efforts to recover the stones sold to the victims and return them to Eisenberg once restitution had been paid in full. The amended order of restitution was entered on March 31.

By letter dated March 24, 2008, Eisenberg requested reconsideration of the March 19 Opinion granting the Government's motion to amend the restitution order. Further, Eisenberg sought a hearing "so that Mr. Eisenberg may be afforded an opportunity to inquire as to whether the petitions on behalf of the new victims establishes good cause and if so, to ascertain the measure of damages." In an Opinion and Order of March 31, Eisenberg's request for reconsideration was denied, but he was given the opportunity to identify the specific factual disputes concerning the Government's March 18 submission that would require a hearing. The Opinion noted that Eisenberg's claim -- that the accurate measure of loss to the victims of his fraud was something other than the price paid by

8

the victims for the stones -- could not be raised for the first time in his motion for reconsideration.  It added that the Government had represented, and that Eisenberg had not contested, that the stones have little or no market value, and that no victim had succeeded in selling his stones.  The Opinion held that "for the purposes of the amended restitution order, the victims' loss will be measured by the price paid for the stones."

DISCUSSION

The burden is on the defendant to identify with specificity material facts in dispute, the resolution of which requires a hearing:

> In general, an evidentiary hearing need not be granted as a matter of course and must be held only if the moving papers allege facts with sufficient definiteness, clarity and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved.  General and conclusory factual allegations which are based upon mere suspicion or conjecture, however, will not suffice to necessitate a hearing.  Moreover, if facts urged in support of a hearing would not entitle the moving party to relief as a matter of law, no evidentiary hearing is required.

<u>Gentile v. County of Suffolk</u>, 926 F.2d 142, 148 (2d Cir. 1991) (citation omitted).

In his submission of April 11, Eisenberg requests that the eleven victims be required to attend an evidentiary hearing to

9

determine "the facts and circumstances surrounding the purchase of the gems and the basis for the late claim." He asks that each of the emeralds purchased by these victims be appraised so that the loss amount can be set "at the difference between price paid for the stones and their value at the time of purchase." With two exceptions, he does not point to any deficiency in the documentary record underlying the eleven victims' claims for restitution. Without identifying the individual victim to whom he is referring, he notes that one of them had merely presented a letter without any underlying documentation. Eisenberg adds that only three of the eleven had produced Eisenberg's gemstone reports with his claim for restitution.

It is too late for Eisenberg to contest the appropriate measure of restitution in this case. Eisenberg did not raise the issue in connection with his sentence. The Report, the sentencing proceeding, and the original order of restitution calculated the amount of loss and of restitution as the amount paid by the victims for the stones. Eisenberg never made any objection to that method of calculation and never requested a <u>Fatico</u> hearing to address that issue or indeed any other factual premise underlying his sentence, despite the Court's invitation that defense counsel identify any issue that required such a hearing. Insofar as a methodology for the calculation of restitution is concerned, Eisenberg has not identified any

10

reason to conclude that any of these eleven victims stand on a different footing than the forty victims encompassed by the restitution order entered on the date he was sentenced.

Moreover, as noted in the March 31 Opinion and Order, the method for calculating the amount of restitution is beyond the scope of this motion for reconsideration. Reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided," nor may the moving party "advance new facts, issues or arguments not previously presented to the Court." Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999). To the extent Eisenberg wished to argue that he was entitled following sentence to revisit the method for calculating the amount of an individual victim's loss, he was required to make that argument in his opposition to the Government's request for the amended restitution order. He did not do so. Instead, his February 11, 2008 submission made a number of other factual and legal arguments.

In his April 10 submission, Eisenberg indicates that he also wishes the eleven victims to testify at a hearing so that he can inquire as to "the basis for the late claim." See 18 U.S.C. § 3664(d)(5) (permitting amendment of the restitution order "upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief"). The Government has made the requisite "good cause" showing. The

Government has submitted an affidavit from the Postal Inspector assigned to this case explaining that all eleven victims told him that they first learned of these criminal proceedings from a victims' rights website after the defendant had been sentenced. This is a sufficient answer to the defendant's inquiry and there is no need to pursue the matter further through a hearing. See United States v. Zakhary, 357 F.3d 186, 191 (2d Cir. 2004) (explaining that "the purpose behind the statutory ninety-day limit on the determination of victims' losses is not to protect defendants from drawn-out sentencing proceedings or to establish finality; rather, it is to protect crime victims from the willful dissipation of defendants' assets").

Finally,[1] Eisenberg seeks a hearing because the supporting documentation is incomplete: (1) the documents for eight of the eleven victims do not include a copy of Eisenberg's gemstone certifications, and (2) the documents for one of the victims do not include the LVZ invoices. As for each of these victims, Eisenberg has not submitted any affidavit denying that he shipped stones to these individuals or otherwise disputing the facts that would render him liable for the losses that they suffered. The Government has presented sufficient evidence to support a finding that each of these victims is as entitled to

---

[1] Arguments raised for the first time in a reply brief are generally not considered by the Court. See Keefe v. Shalala, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995).

restitution from Eisenberg as was each of the forty victims encompassed by the restitution order entered without objection from Eisenberg on the day of sentence. Eisenberg is not entitled to a hearing based on speculation.

CONCLUSION

Eisenberg's March 24 request for a hearing is denied.

SO ORDERED:

Dated:   New York, New York
         June 30, 2008

_____
DENISE COTE
United States District Judge